ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| GLORINID CANDELARIA COLÓN<br><br>Apelante<br><br>v.<br><br>MERVIN MARRERO GUTIÉRREZ<br><br>Apelado | KLAN202400114 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Cabo Rojo<br><br>Caso Núm.: CB2023CV00435<br><br>Sobre: Liquidación de Comunidad de Bienes |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de marzo de 2024.

Comparece la señora Glorinid Candelaria Colón (en adelante, señora Candelaria Colón y/o apelante) mediante un recurso de Apelación para solicitarnos la revisión de la *Sentencia* emitida el 20 de diciembre de 2023 y notificada el 11 de enero de 2024 por el Tribunal de Primera Instancia, Sala de Cabo Rojo (en adelante, TPI).[1] Mediante la *Sentencia* apelada, el TPI desestimó la *Demanda* instada por la señora Candelaria Colón.

Por los fundamentos que expondremos, se confirma la *Sentencia* apelada.

**I**

Según se desprende del expediente ante nos, previo a la radicación del caso del título, el 2 de marzo de 2023, el licenciado Alexis Yaphet Muñiz Cruz, representante legal de la apelante, le remitió un correo electrónico al señor Mervin F. Marrero Gutiérrez

---

[1] Apéndice de la apelante, a las págs. 33-38.

Número Identificador

SEN2024_____

(en adelante, señor Marrero Gutiérrez y/o apelado).[2] En lo aquí pertinente, la señora Candelaria Colón interesaba que se le pagara su parte de la propiedad, que más adelante detallaremos, y se procediera a realizar la escritura de compraventa en la cual el señor Marrero Gutiérrez asumiría la hipoteca.

El 17 de abril de 2023, el licenciado Alfredo Ocasio Pérez, representando legal del apelado, remitió un correo electrónico al representante legal de la señora Candelaria Colón.[3] En lo aquí concerniente, se adjuntó evidencia de que el 15 de marzo de 2023, el señor Marrero Gutiérrez le hizo entrega a la señora Candelaria Colón de un cheque de gerente número 001291 de la Cooperativa de Ahorro y Crédito de Mayagüez por la suma de $50,000.00 dólares.

De ahí, el 20 de junio de 2023, la señora Candelaria Colón presentó una *Demanda*.[4] Adujo que las partes sostuvieron una relación consensual en la que adquirieron el siguiente bien inmueble en común proindiviso:

> RÚSTICA: Solar número cuarenta y tres (43) del Bloque "C", sito en el proyecto de vivienda conocido como Mansiones del Barrio Guanajibo del municipio de Cabo Rojo, con una cabida superficial de NOVECIENTOS SETENTA PUNTO OCHENTA METROS CUADRADOS (970.80 MC) en lindes por el NORTE, con el Solar número cuarenta y dos (42) del bloque "C"; por el SUR, con el solar número cuarenta y cuatro (44) del bloque "C"; por el ESTE, con los solares número cincuenta (50) y cincuenta y uno (51) del bloque "C"; y por el OESTE, con la calle número cinco (5) de la Urbanización.
>
> Enclava una estructura dedicada a vivienda.
>
> Este solar se encuentra afectado por su colindancia oeste con servidumbre a favor de la Puerto Rico Telephone Company.
>
> Inscrita al folio 142 del tomo 1000 de Cabo Rojo, finca número 34,423, del Registro de la Propiedad de San Germán.
>
> Catastro: 308-035-384-43-000

---

[2] Apéndice de la apelante a las págs. 51-52.
[3] *Id.,* las págs. 53-56.
[4] *Id.,* a las págs. 1-3.

Alegó en la *Demanda* que dicha propiedad fue adquirida en comunidad de bienes en proporciones del cincuenta por ciento (50%) cada parte mediante la escritura número treinta y nueve (39) el 24 de febrero de 2017.[5] Abundó que en dicha escritura se estableció el derecho de hogar seguro conforme a la Ley Núm. 195 del 13 de septiembre de 2011 (en adelante Ley Núm. 95-2011).[6] Ahora bien, expuso que, a pesar de haber recibido el pago de $50,000.00 dólares en pago de la participación en dicha comunidad de bienes, el señor Marrero Gutiérrez se ha negado a otorgar la correspondiente escritura y realizar el proceso administrativo y notarial con la institución bancaria para liberar a la apelante de la responsabilidad de la hipoteca que grava la propiedad a favor de FirstBank Puerto Rico. Esbozó que dicha negativa le impide tener su crédito disponible para la adquisición de una nueva propiedad, y que no puede reclamar el hogar seguro porque el apelado destruyó el interior de la propiedad en cuestión. Así, las cosas, solicitó que se ordenara la liquidación de la comunidad de bienes y la liberación de la señora Candelaria Colón de la hipoteca que grava la propiedad.

Por su parte, el 8 de agosto de 2023, el señor Marrero Gutiérrez presentó su *Contestación a Demanda*.[7] Detalló que, el TPI estaba impedido por ley de liberar a la señora Candelaria Colón de la deuda hipotecaria voluntariamente asumida por esta mientras el acreedor hipotecario no consienta a ello. Arguyó haber realizado y haberse mantenido gestionando con el acreedor hipotecario a los fines de que este consienta a liberar a la apelante de la deuda que tiene por razón de dicha hipoteca. Además, negó que hubiese destruido el interior de la propiedad en cuestión. Expuso que, una vez adquirida la propiedad, las partes comenzaron un proceso de

---

[5] *Id.,* a las págs. 4-12.
[6] Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, Ley Núm. 195 de 13 de septiembre de 2011, según enmendada, 31 LPRA § 1858 nota *et seq.*
[7] Apéndice de la apelante, a las págs. 13-15.

remodelación y que estando en ese proceso, la señora Candelaria Colón decidió separarse del señor Marrero Gutiérrez.

Como parte de los eventos acaecidos, el 25 de septiembre de 2023, la señora Candelaria Colón le cursó un *Interrogatorio / Producción de Documentos* al señor Marrero Gutiérrez.[8]

Luego, el 3 de octubre de 2023, el señor Marrero Gutiérrez presentó una *Moción de Desestimación.*[9] Expuso que la *Demanda* dejaba de exponer una reclamación que justificara la concesión de un remedio. Alegó que, a la señora Candelaria Colón solicitar que se le satisficiera su cuota en el bien común en dinero, fijar el precio de su cuota en la suma de $50,000.00 dólares y el señor Marrero Gutiérrez satisfacerle su cuota mediante el pago de la suma acordada, según dispone el Artículo 854 del Código Civil de Puerto Rico de 2020,[10] se dio la reunión de todas las cuotas del bien común en la persona del apelado y, según dispone la ley, la comunidad de bienes quedó extinguida. Así pues, esbozó que el pleito era académico toda vez que no existía una comunidad de bienes para dividir. Respecto a que se otorgara la escritura para fines registrales, expuso que no se podía hacer hasta que ocurriese una de las siguientes situaciones: (i) el acreedor hipotecario accediera a relevar a la señora Candelaria Colón de la deuda que tiene con el señor Marrero Gutiérrez en carácter solidario; (ii) si el acreedor hipotecario no accediera a relevar a la señora Candelaria Colón de la deuda con la institución bancaria, el señor Marrero Gutiérrez hiciera un refinanciamiento de la deuda y de esa forma la apelante quedaría liberada de la deuda actual; o, (iii) el señor Marrero Gutiérrez vendiera la propiedad para poder saldar la deuda hipotecaria con la institución financiera. Adujo que el TPI no puede obligar a la

---

[8] Apéndice de la apelante, a las págs. 66-72.
[9] *Id.,* a las págs. 16-20.
[10] 31 LPRA § 8227, Art. 854.

institución hipotecaria a liberar a la señora Candelaria Colón de la deuda, debido a que dicha institución no es parte en el pleito y la decisión de liberar a un deudor solidario es una obligación exclusiva del acreedor.

Por su parte, el 16 de octubre de 2023, la señora Candelaria Colón presentó su *Oposición a Desestimación*.[11] Alegó que se podía efectuar la compraventa de la propiedad sin ser necesario el consentimiento del acreedor, ya que lo que le corresponde al apelado es liberar a la señora Candelaria Colón de la responsabilidad en cuanto a la hipoteca. Señaló que, el señor Marrero Gutiérrez no había provisto ni ninguna documentación que acreditara su falta de capacidad para asumir la totalidad de la hipoteca. Por consiguiente, acotó que procedía la venta de la propiedad por la vía judicial para la liberación de la participación de la señora Candelaria Colón en la deuda hipotecaria de la propiedad. Además, arguyó que, bajo el Artículo 64 Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico,[12] las partes pueden pactar la transmisión de la obligación hipotecaria.

El TPI señaló la celebración de una vista argumentativa, la cual fue celebrada el 18 de diciembre de 2023. De ahí, el 20 de diciembre de 2023, notificada el 11 de enero de 2024, el TPI dictó la *Sentencia* apelada.[13] Mediante la *Sentencia,* el foro primario declaró *Con Lugar* la solicitud de desestimación presentada por el apelado por lo que desestimó la *Demanda* e impuso a la apelante el pago de $1,000.00 dólares por concepto de honorarios de abogado.

En la *Sentencia,* el TPI tomó como ciertos los siguientes hechos alegados en la *Demanda*:

1. Las partes adquirieron en común proindiviso el inmueble que se describe a continuación:

---

[11] Apéndice de la apelante, a las págs. 21-23.
[12] Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210 de 8 de diciembre de 2015, según enmendada, Art. 64, 30 LPRA § 6091.
[13] Apéndice de la apelante, a las págs. 33-39.

     a. RÚSTICA: Solar número cuarenta y tres (43) del Bloque "C" sito en el proyecto de vivienda conocido como Mansiones del Barrio Guanajibo del municipio de Cabo Rojo, con una cabida superficial de NOVECIENTOS SETENTA PUNTO OCHENTA METROS CUADRADOS (970.80 MC) en lindes por el NORTE, con el Solar número cuarenta y dos (42) del bloque "C"; por el SUR con el solar número cuarenta y cuatro (44) del bloque "C"; por el ESTE, con los solares número cincuenta (50) y cincuenta y uno (51) del bloque "C"; y por el OESTE, con la calle número cinco (5) de la Urbanización.

     Enclava una estructura dedicada a vivienda.

     Este solar se encuentra afectado por su colindancia oeste con servidumbre a favor de la Puerto Rico Telephone Company.

     Inscrita al folio 142 del tomo 1000 de Cabo Rojo, finca número 34,423, del Registro de la Propiedad de San Germán.

     Catastro: 308-035-384-43-000.

2. La propiedad se encuentra afecta[sic] a una hipoteca con una institución financiera.

3. La parte demandada, con anterioridad a la presentación de la demanda del caso de autos, adquirió de la parte demandante la participación de esta en el inmueble por la suma de $50,000.00.

4. Las partes no han otorgado escritura al respecto ni han solicitado de la institución financiera el relevo de la parte demandante sobre la deuda que esta contrajo solidariamente con la parte demandada que está garantizada con una hipoteca sobre el inmueble anteriormente descrito.

5. En la vista argumentativa señalada, la parte demandante admitió que con el pago de su participación en el bien inmueble se extinguió la comunidad de bienes.

El TPI determinó que con el pago de los $50,000.00 dólares las cuotas de los comuneros quedaron reunidas en la persona del señor Marrero Gutiérrez, quedando así extinguida la comunidad de bienes. Cónsono con lo anterior, esbozó que no procede dividir lo que ya no existe y que el Tribunal no puede conceder el remedio que solicita la señora Candelaria Colón en su *Demanda.* En lo concerniente a la liberación de la apelante de la deuda hipotecaria, indicó que el Tribunal tampoco podía conceder dicho remedio. Señaló que, la liberación de la señora Candelaria Colón de la hipoteca que grava la propiedad, es potestad exclusiva del acreedor, quien no es parte en el caso. Ahora bien, expreso que:

La parte demandante pide que obliguemos al demandado a otorgar la escritura en donde se haga

constar que el demandado adquirió la participación de la demandante en el inmueble en cuestión, pero no existe un remedio en ley por el cual este Tribunal obligue a las partes a otorgar dicha escritura. Lo aconsejable es que las partes, en algún momento lo hagan, para que así el Registro de la Propiedad lo publique.

En su *Sentencia,* el TPI le impuso a la señora Candelaria Colón la suma de $1,000.00 dólares en honorarios de abogado.

El 11 de enero de 2024, el señor Marrero Gutiérrez presentó un *Memorando de Costas y Gastos* a tenor con la Regla 44.1(D) de las Reglas de Procedimiento Civil.[14] Solicitaron $90.00 dólares de arancel de comparecencia. En la misma fecha, el TPI emitió una *Orden* en la que declaró Con Lugar el *Memorando de Costas y Gastos.*

El 22 de enero de 2024, la señora Candelaria Colón presentó una *Solicitud de Reconsideración* al amparo de la Regla 47 de las Reglas de Procedimiento Civil.[15] Expuso que, el TPI debía reconsiderar su posición y recibir prueba sobre la intención de las partes cuando pactaron las condiciones y cláusulas que conducirían a la extinción de la comunidad con el pago de los $50,000.00 dólares, no solo como bien/activo sino como obligaciones/pasivo comunes y proporcionales a sus cuotas.

Por su parte, el 23 de enero de 2024, el señor Marrero Gutiérrez presentó su *Oposición a Moción de Reconsideración.*[16] Expuso que en la *Solicitud de Reconsideración* la señora Candelaria Colón pretendía tardíamente enmendar las alegaciones de su *Demanda* e incluir una serie de documentos que no presentó anteriormente en su *Oposición a Desestimación.* Además, esbozó que la apelante intentó presentar nuevas teorías y alegaciones que no fueron realizadas anteriormente. A esos efectos, añadió que la

---

[14] Apéndice de la apelante, a las págs. 91-92. 32 LPRA Ap. V, R. 44.1(D).
[15] *Id.,* a las págs. 40-78. 32 LPRA Ap. V, R. 47.
[16] *Id.,* a las págs. 78-84.

señora Candelaria Colón incluyó una sección intitulada "Hechos" en donde procedió a alegar una serie de hechos (#3, #5, #6, #7 y #9) que no se encuentran en la *Demanda,* ni en la *Oposición a Desestimación* y que no fueron expuestos en la vista argumentativa, de los cuales no hay prueba. Por consiguiente, señaló que la *Solicitud de Reconsideración* no cumple con lo que requiere la Regla 47 de las Reglas de Procedimiento Civil.[17]

El 24 de enero de 2024, el TPI emitió una *Resolución* declarando No Ha Lugar la *Solicitud de Reconsideración.*[18] El Tribunal expuso que: "La solicitud no cumple con la Regla 47 de las de Procedimiento Civil".

Inconforme, el 9 de febrero de 2024, la peticionaria presentó ante nos un Recurso de Apelación donde esbozó que el TPI cometió sietes (7) errores:

> Primer Error:
> Erró el honorable Tribunal de Primera Instancia al dictar Sentencia desestimatoria por no existir una comunidad de bienes en común proindiviso entre las partes.
>
> Segundo Error:
> Erró el honorable Tribunal de Primera Instancia al dictar Sentencia desestimatoria entendiendo que en cuanto a las cargas y obligaciones de un bien cuya titularidad está en comunidad no existe comunidad de bienes.
>
> Tercer Error:
> Erró el honorable Tribunal de Primera Instancia al dictar Sentencia desestimatoria y no reconoce que en la relación interna de los deudores solidarios el contrato de transacción en cuanto a las proporciones de las cargas y obligaciones que corresponden a cada deudor de las obligaciones de una comunidad de bienes.
>
> Cuarto Error:
> Erró el honorable Tribunal de Primera Instancia al dictar Sentencia desestimatoria sin realizar determinación alguna en cuanto al hogar seguro de la demandante en el inmueble.
>
> Quinto Error:
> Erró el honorable Tribunal de Primera Instancia al dictar Sentencia desestimatoria reconociendo la

---

[17] 32 LPRA Ap. V, R. 47.
[18] Apéndice de la apelante, a las págs. 87-88.

existencia de un contrato verbal, sin efectuar una vista evidenciaria a los fines de recibir y evaluar la prueba de la intención de las partes contratantes.

Sexto Error:
Erró el honorable Tribunal de Primera Instancia al dictar Sentencia desestimatoria y no aplicar lo dispuesto en el Artículo 846 del Código Civil de 2020 al caso de epígrafe.

Séptimo Error:
Erró el honorable Tribunal de Primera Instancia al dictar Sentencia desestimatoria e imponer la cantidad de $1,000.00 en honorarios de abogado sin cumplir con la Regla 44.1 (D) de las de Procedimiento Civil.

El 16 de febrero de 2024, la señora Candelaria Colón presentó una *Moción Informativa* acreditando haber notificado copia del recurso al apelado, conforme a lo dispuesto en la Regla 13 (B), y al TPI, conforme a lo dispuesto en la Regla 14 (B) del Reglamento del Tribunal de Apelaciones. Por su parte, el 23 de febrero de 2024, el señor Marrero Gutiérrez presentó su *Alegato Parte Apelada*.

Con la comparecencia de ambas partes, procedemos a resolver el recurso ante nuestra consideración.

**II**

**A. Recurso de Apelación**

La Regla 52.2 (a) de las Reglas de Procedimiento Civil[19], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[20] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[21] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

---

[19] 32 LPRA Ap. V, R. 52.2 (a).
[20] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE*, 145 DPR 122, 131 (1998); *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[21] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.[22]
> […]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[23] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la moción.[24] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

**B. Regla 10.2 de las Reglas de Procedimiento Civil**

La Regla 10.2 de las Reglas de Procedimiento Civil regula la presentación de defensas y objeciones a una reclamación judicial.[25] La moción de desestimación al amparo de esta regla es una defensa especial que formula el demandado en la que solicita que se desestime la demanda presentada en su contra, aun sin necesidad de formular una alegación previa.[26]

La regla establece que:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
> (1) falta de jurisdicción sobre la materia;
> (2) falta de jurisdicción sobre la persona;
> (3) insuficiencia del emplazamiento;
> (4) insuficiencia del diligenciamiento del emplazamiento;
> **(5) dejar de exponer una reclamación que justifique la concesión de un remedio**;
> (6) dejar de acumular una parte indispensable.[27]
> (Énfasis suplido).

---

[22] 4 LPRA Ap. XXII-B, R. 13 (A).
[23] 32 LPRA Ap. V, R. 47.
[24] *Id.*
[25] 32 LPRA Ap. V, R. 10.2.
[26] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Colón v. Lotería,* 167 DPR 625, 649 (2006).
[27] 32 LPRA Ap. V, R. 10.2.

El tribunal interpretará las alegaciones de la demanda conjuntamente, de forma liberal y de la manera más favorable posible a la parte demandante para determinar si la misma es suficiente para constituir una reclamación válida.[28] No obstante, procederá la desestimación cuando existan circunstancias que permitan a los tribunales determinar, sin ambigüedades, que la demanda carece de todo mérito o que la parte demandante no tiene derecho a obtener algún remedio.[29]

## C. Honorarios de Abogado por Temeridad

La Regla 44 de las Reglas de Procedimiento Civil aborda lo relativo a costas, honorarios de abogado e interés legal. La Regla 44.1 de las Reglas de Procedimiento Civil tiene un fin de índole disuasivo: desalentar los pleitos temerarios y superfluos.[30] En particular, la Regla 44.1 (d) de las Reglas de Procedimiento Civil dispone lo siguiente sobre los honorarios de abogados:

> [...]
> (d) *Honorarios de abogado.* En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. [...][31]

El concepto temeridad no está expresamente definido por la Regla 44.1(d) de las Reglas de Procedimiento Civil.[32] La temeridad ha sido definida como:

> [...] una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio.[33]

---

[28] *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994).
[29] *González Méndez v. Acción Social et al.*, 196 DPR 213, 235 (2016).
[30] *J.T.P. Development Corp. v. Majestic Realty Corp.*, 130 DPR 456, 460 (1992).
[31] 32 LPRA Ap. V, R. 44.1 (d).
[32] *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718 (1987).
[33] *Id.*; H. Sánchez, Rebelde Sin Costas, 4(2) Boletín Judicial 14 (1982).

Existen varias instancias bajo las cuales puede surgir temeridad, a saber: (i) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (ii) defenderse injustificadamente de la acción; (iii) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (iv) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad; y, (v) negar un hecho que le conste es cierto a quien hace la alegación.[34] A tales efectos, el propósito de la imposición de honorarios de abogado en casos de temeridad es: "establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito".[35]

**La determinación de temeridad es de índole discrecional, por lo que los tribunales apelativos solo debemos intervenir con ella cuando nos enfrentemos a un caso de abuso de discreción**.[36] (Énfasis suplido). Ahora bien, una vez el tribunal sentenciador concluye que una parte ha sido temeraria, es imperativa la imposición de honorarios de abogado.[37]

### D. Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar

La Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar fue creada con el fin de ampliar la protección de hogar seguro. "En Puerto Rico existe un alto interés social de

---

[34] *Blas v. Hosp. Guadalupe*, 146 DPR 267, 335-336 (1998); *Fernández v. San Juan Cement Co., Inc.*, Id.

[35] *Andamios de P.R. v. Newport Bonding*, 179 DPR 503, 520 (2010); *Fernández v. San Juan Cement Co., Inc.*, Id.

[36] S.*L.G. Flores–Jiménez v. Colberg*, 173 DPR 843, 866 (2008); *Colón Santos v. Coop. Seg. Mult. P.R.*, 173 DPR 170 (2008); *P.R. Oil v. Dayco*, 164 DPR 486 (2005).

[37] *P.R. Oil v. Dayco, Id.*, 511 (2005).

proteger la familia y fomentar la adquisición por cada familia de una vivienda adecuada y segura".[38] A esos efectos, la protección de "hogar seguro" tiene como finalidad que cada ciudadano propietario cuente con una protección básica ante el riesgo de ejecución de una sentencia en contra de su residencia.[39] A la luz delo anterior, la protección del concepto de "hogar seguro" fue incorporada en nuestra Constitución en la Sección 7 del Artículo II, la cual dispone que: "[l]as leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargos".[40]

El derecho a hogar seguro consiste en que todo individuo o jefe de familia, domiciliado en Puerto Rico, tendrá derecho a poseer y disfrutar, en concepto de hogar seguro, una finca consistente en un predio de terreno y la estructura enclavada en el mismo, o una residencia bajo el régimen de la Ley de Condominios, o una residencia edificada bajo el derecho de superficie, que le pertenezca o posea legalmente, y estuviere ocupado por éste o por su familia exclusivamente como residencia principal.[41] Dicha legislación provee protección en casos de venta, y dispone que:

> En los casos donde se venda la propiedad que constituya hogar seguro conforme a las disposiciones de esta Ley, el dueño tendrá un plazo de nueve (9) meses, a partir del momento de la venta, para invertir el dinero recibido en otra propiedad localizada en Puerto Rico y para que ésta constituya su nuevo hogar seguro. Entiéndase que en estos casos, el dinero recibido por la antigua propiedad, quedará protegido de acreedores durante esos nueve (9) meses. La protección económica aquí dispuesta se dirige exclusivamente a dictar las reglas del derecho a hogar seguro y en nada restringe lo dispuesto en las leyes contributivas.[42]
> [...]

---

[38] Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, Ley Núm. 195 de 13 de septiembre de 2011, según enmendada, Exposición de Motivos, 31 LPRA § 1858 nota *et seq.*
[39] *Id.*
[40] *Id.*
[41] *Id.*, Art. 3, 31 LPRA § 1858.
[42] *Id.*, Art. 8, 31 LPRA § 1858e.

**III**

El recurso ante nuestra consideración versa sobre el dictamen emitido por la primera instancia judicial mediante el cual desestimó la acción sobre liquidación de comunidad de bienes presentada por la aquí apelante. El TPI desestimó la *Demanda* ya que dejaba de exponer una reclamación que justificara la concesión de un remedio conforme a la Regla 10.2 (5) de las Reglas de Procedimiento Civil[43]. Bajo nuestro ordenamiento jurídico, procederá la desestimación cuando existan circunstancias que permitan a los tribunales determinar, sin ambigüedades, que la *Demanda* carece de todo mérito o que la demandante, y aquí apelante, no tiene derecho a obtener algún remedio.[44]

En el recurso, la señora Candelaria adujo que el TPI cometió siete (7) errores al dictar *Sentencia* desestimatoria: (i) por no existir una comunidad de bienes en común proindiviso entre las partes; (ii) entendiendo que en cuanto a las cargas y obligaciones de un bien cuya titularidad está en comunidad no existe comunidad de bienes; (iii) y no reconocer que en la relación interna de los deudores solidarios el contrato de transacción en cuanto a las proporciones de las cargas y obligaciones que corresponden a cada deudor de las obligaciones de una comunidad de bienes; (iv) sin realizar determinación alguna en cuanto al hogar seguro de la demandante en el inmueble; (v) reconociendo la existencia de un contrato verbal, sin efectuar una vista evidenciaria a los fines de recibir y evaluar la prueba de la intención de las partes contratantes; (vi) y no aplicar lo dispuesto en el Artículo 846 del Código Civil;[45] e, (vii) imponer la cantidad de $1,000.00 dólares en honorarios de abogado sin cumplir con la Regla 44.1 (D) de las Reglas de Procedimiento Civil.[46]

---

[43] 32 LPRA Ap. V, R. 10.2 (5).
[44] *González Méndez v. Acción Social et al.,* 196 DPR 213, 235 (2016).
[45] 31 LPRA § 8208, Art. 846.
[46] 32 LPRA Ap. V, R. 44.1 (D).

Por guardar relación entre sí, comenzaremos discutiendo el primero, segundo, tercero, quinto y sexto error en conjunto. Adelantamos que, los errores antes mencionados no fueron cometidos, veamos. En nuestro ordenamiento jurídico se reconoce la figura del concubinato como una relación entablada entre dos (2) personas que cohabitan públicamente, haciendo vida marital, sin estar unidos en matrimonio.[47] El Tribunal Supremo de Puerto Rico ha resuelto que la figura de la comunidad de bienes es el régimen económico aplicable en algunos casos en los cuales dos (2) personas viven en concubinato. La figura de la comunidad de bienes existe cuando una **cosa o un derecho** pertenecen en común proindiviso a dos (2) o más personas.[48] (Énfasis suplido).

El caso ante nos, surgió tras la presentación de una *Demanda* radicada por la señora Candelaria Colón en la que solicitó liquidar una comunidad de bienes que alegó todavía existía entre ella y el señor Marrero Gutiérrez sobre un bien inmueble. La comunidad de bienes originalmente fue creada, ya que las partes sostuvieron una relación consensual, producto de la cual compraron el bien inmueble en cuestión. La propiedad fue adquirida en comunidad de bienes en proporciones del cincuenta por ciento (50%) cada parte el 24 de febrero de 2017. La *Demanda* de liquidación de comunidad relacionada a dicho bien inmueble, el 15 de marzo de 2023, el señor Marrero Gutiérrez adquirió la cuota de la señora Candelaria Colón mediante el pago de $50,000.00 dólares.

Existen tres (3) modos de extinción de la comunidad de bienes: (a) por las mismas causas que se extinguen los derechos reales; **(b) por la reunión de todas las cuotas en una misma persona**; o (c) por la división de la cosa común.[49] (Énfasis suplido).

---

[47] Ruth Ortega Vélez, *Compendio de Derecho de Familia,* Tomo II, Publicaciones JTS, 2000, pág. 607.
[48] 31 LPRA § 8191, Art. 835.
[49] 31 LPRA § 8221, Art. 848.

Por consiguiente, con el pago de los $50,000.00 dólares, las cuotas quedaron reunidas en la persona del señor Marrero Gutiérrez. Destacamos que, en su *Sentencia*, el TPI expresó que: "Este Tribunal señaló la celebración de una vista argumentativa, la cual fue celebrada el 18 de diciembre de 2023. Durante la misma, la parte demandante aceptó que la comunidad de bienes ya no existía pero que había varios aspectos de la comunidad de bienes por resolver".[50]

Ahora bien, el bien inmueble objeto de la controversia se encuentra gravado con una hipoteca a favor de FirstBank. Por consiguiente, en la *Demanda*, la señora Candelaria Colón también solicitó ser liberada de la hipoteca que grava la propiedad. Hacemos la salvedad que, FirstBank, el banco que financió la compraventa del inmueble no es parte en este pleito. El Artículo 64 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico dispone sobre la venta de finca hipotecada que: "En caso de venta de la finca hipotecada, el deudor obligacional no será relevado de su responsabilidad hasta tanto el acreedor preste su consentimiento expreso. […]"[51]

Es menester señalar que, en lo que concierne a los derechos del comunero respecto a su cuota, se dispone que tiene los derechos inherentes a la plena propiedad de su cuota y de los frutos que le correspondan y **puede enajenarla**, cederla, **gravarla** o sustituir a otro en su aprovechamiento, salvo que se trate de derechos personalísimos.[52] (Énfasis suplido). A la luz de lo anterior, el efecto de la enajenación o el gravamen se limita a todos los derechos que pertenecen al comunero al momento de la división de la comunidad.[53]

---

[50] Apéndice de la apelante, a la pág. 35.
[51] Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210 de 8 de diciembre de 2015, según enmendada, Art. 64, 30 LPRA § 6091.
[52] 31 LPRA § 8207, Art. 845.
[53] *Id.*

Reiteramos que fue mediante un correo electrónico el 2 de marzo de 2023, que la señora Candelaria Colón le indicó al señor Marrero Gutiérrez que: "[…] el interés de la Sra. Candelaria Colón es que se le pague su parte y se proceda a la escritura de compraventa asumiendo la hipoteca. Al día de hoy la cantidad se entiende es por la cantidad de cincuenta mil dólares ($50,000.00)".[54] En su *Demanda,* la señora Candelaria Colón nunca cuestionó el negocio jurídico realizado por las partes para que el señor Marrero Gutiérrez adquiriese la cuota de la apelante en el bien inmueble. El negocio que se realizó entre las partes no constituyó un contrato de transacción como intenta alegar la apelante por primera vez mediante su recurso de *Apelación,* por lo que el TPI no tenía que resolver que se formó una relación interna de deudores solidarios. El Código Civil define el contrato de transacción como uno que, mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre sobre una relación jurídica.[55] No obstante, destacamos que, el tercer error relacionado al contrato de transacción, según redactado en el recurso de *Apelación* da la impresión de ser un pensamiento incompleto.

Por su parte, en lo que respecta a la enajenación de cuotas se indica que, la enajenación de cuotas en común proindiviso sobre un terreno debe constar en instrumento público para que sea válida.[56] Dicha cuota puede ser satisfecha en especie o dinero, el Artículo 854 del Código Civil lee como sigue:

> Si algún comunero objeta la continuación de la indivisión, los restantes comuneros pueden satisfacerlo entregándole su cuota en especie, siempre que sea fácilmente separable del resto de la cosa indivisa, o en dinero, como él prefiera.[57]
> […]

---

[54] Apéndice de la apelante, a las págs. 51-52.
[55] 31 LPRA § 10641, Art. 1497.
[56] 31 LPRA § 8208, Art. 846.
[57] 31 LPRA § 8227, Art. 854.

Cónsono con lo anterior expuesto, no procede dividir la comunidad de bienes, ya que quedó extinta ante la reunión de cuotas en la persona del señor Marrero Gutiérrez, a raíz de ello el Tribunal no podía conceder el remedio que solicitó la señora Candelaria Colón en su *Demanda*.

En cuanto al cuarto error, en lo que respecta al derecho de hogar seguro, existe una protección en casos de venta. La protección consiste en que:

> En los casos donde se venda la propiedad que constituya hogar seguro conforme a las disposiciones de esta Ley, el dueño tendrá un plazo de nueve (9) meses, a partir del momento de la venta, para invertir el dinero recibido en otra propiedad localizada en Puerto Rico y para que ésta constituya su nuevo hogar seguro. Entiéndase que, en estos casos, el dinero recibido por la antigua propiedad, quedará protegido de acreedores durante esos nueve (9) meses. La protección económica aquí dispuesta se dirige exclusivamente a dictar las reglas del derecho a hogar seguro y en nada restringe lo dispuesto en las leyes contributivas.[58]
> […]

En el caso ante nos, la señora Candelaria Colón le vendió su cuota en el inmueble que constituía el hogar seguro al señor Marrero Gutiérrez. Esto, debido a que en la escritura número treinta y nueve (39), mediante la cual adquirieron originalmente el bien inmueble, se estableció el derecho de hogar seguro conforme a la Ley Núm. 195-2011.[59] Como parte de dicha venta, la señora Candelaria Colón recibió una cantidad de $50,000.00 dólares. El artículo antes citado no provee ningún remedio que le pudiese haber otorgado el foro primario a la señora Candelaria Colón. Por lo tanto, no erró el TPI al dictar *Sentencia* desestimatoria sin realizar determinación alguna en cuanto al hogar seguro de la señora Candelaria Colón en el inmueble.

---

[58] Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, Ley Núm. 195 de 13 de septiembre de 2011, según enmendada, Art. 8, 31 LPRA § 1858e.

[59] Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, Ley Núm. 195 de 13 de septiembre de 2011, según enmendada, 31 LPRA § 1858 nota *et seq.*

En lo concerniente al séptimo y último error, la Regla 44.1 de las Reglas de Procedimiento Civil regula lo concerniente a las costas y los honorarios de abogados. En particular su inciso (d) sobre honorarios de abogado dispone que: "En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. [...]"[60]

Es menester recordar que, la determinación de temeridad es de índole discrecional, por lo que los tribunales apelativos solo debemos intervenir con ella cuando nos enfrentemos a un caso de abuso de discreción.[61] Aunque en la *Sentencia* no se utilizó propiamente la palabra temeridad, es lógico concluir que, al imponer a la señora Candelaria Colón el pago de honorarios, ello se debió a que se le había considerado temeraria. A la luz de lo anterior, no erró el TPI al imponer la cantidad de $1,000.00 dólares en honorarios de abogado al amparo de la Regla 44.1 (D) de las de Procedimiento Civil.[62]

Finalmente, tras juzgar que los errores esgrimidos por la parte apelante no fueron cometidos, procede que confirmemos la *Sentencia* apelada.

## IV

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[60] 32 LPRA Ap. V, R. 44.1 (D).
[61] S.*L.G. Flores–Jiménez v. Colberg, supra*; *Colón Santos v. Coop. Seg. Mult. P.R., supra*; *P.R. Oil v. Dayco, supra.*
[62] 32 LPRA Ap. V, R. 44.1 (D).